Good afternoon, ladies and gentlemen. Our case for argument this afternoon is National Wildlife Refuge Association v. ITC Midwest. Ms. Bossart. May it please the court. Stacey Bossart for ITC Midwest and Dairyland Power Cooperative. ITC and Dairyland are utilities that own the Cardinal Hickory Creek high voltage transmission line, a backbone project designed to make the grid more reliable, provide lower cost energy for consumers, and support the transition of the grid to renewable energy in keeping with the goals and policies of the states in the Mid-Continent Independent System Operator, or MISO, region. This is an appeal from multiple orders the district court entered on March 21st, 22nd, and 25th, each of which preliminarily enjoined the Fish and Wildlife Service and the utilities from closing on a land exchange or building a less than a mile long section of the project in the upper Mississippi River National Wildlife and Fish Refuge once the exchange occurred. Utilities immediately appealed these orders and moved to stay them. After briefing was submitted, this court granted the stay motion on May 2nd. Based on significant errors in those orders, it clarified that the court was free to consider any requests for permanent injunctive relief while the appeal remained pending. In the six months since that stay order issued, the utilities have built the section of the line that crosses the refuge at the preferred crossing and have removed all towers from their pre-existing rights-of-way in a more sensitive area of the refuge where restoration efforts are underway. The line went into service on September 26th. Meanwhile, the plaintiffs continued to file motions seeking preliminary injunctive relief in the district court, including one that was filed within hours of this court's May 2nd stay order, and at least one that one might think that preliminary injunctive relief is no longer on the table. I wonder whether the case is now moot. What's your view of that question? So, Your Honor, plaintiffs have at least one motion for preliminary injunctive relief that is briefed and pending before the district court. I'm really not asking what plaintiffs want. I will be talking to them when they get up. I'm asking what your view is. Thank you, Your Honor. Our view is that the utilities will be required from time to time to perform maintenance and repair work in one or both of the rights-of-ways, the new right-of-way or the previous right-of-way, and they will be required to perform vegetation management under the terms of the land exchange agreement. There is a live but stayed order in joining construction in the refuge. We do not know how the court will interpret that order. We do not know how plaintiffs will ask the court to interpret it. We don't know how it will be interpreted in light of what has transpired. Could I maybe sharpen this a little bit? My question is not whether the case is moot, but whether this appeal is moot. We have the March 21st order expired by its own terms, correct? Your Honor, I do not agree that it expired. Well, the March 21st order was continued by the district court. Its later orders were labeled continuation of that order. And the second and third orders. So the later orders then become focus, okay? The text order says pending a decision on the pending motion for preliminary injunction and that happened, right? No, Your Honor. And then the March 25th order enjoins any action to close the land exchange agreement or begin construction on the stretch involved here. Both of those things have happened. So what further effect does that order have? Your Honor, the March 25th order provided that it would continue in effect until the court received additional briefing with the benefit of the complete administrative record. And that continues in effect, but those things have happened with the blessing of this court's stay. So what do we need to do? Well, respectfully, Your Honor, we disagree that that has expired by its terms because the terms are that it will expire when the court issues a full and by that the to close the land exchange agreement. We have, we did close the land exchange. That's moved. And you have begun construction. In fact, as I understand it, you've completed construction on the stretch of the Cardinal Hickory Creek transmission line project running through and across the Upper Mississippi River National Wildlife and Fish Refuge. Your Honor, we are continuing to do work. The utilities are continuing to do work in the refuge. They should not bear the risk of being hailed into court because someone interprets on-the-ground activity as being violative of that order, whether it be the plaintiffs or the... If we say it's moot, it's expired, what's the risk? Your Honor, if this court, well, first of all, we think the better course would be a final decision on the merits tracking the reasoning of the stay order. If this court were to issue a decision finding it moot, we think that our interest would only be protected if the court also added that it is moot because those orders have no continued effect. That's what mootness means. That's, that's what I'm suggesting. It sounds like you want us also to scold the district judge while we do that. Plaintiff's counsel has asked for the appeal to simply be dismissed as moot without, without vacating the preliminary injunction orders. Why would you vacate an order? Well, if, if something is moot, the order gets vacated automatically, but why would you vacate an order that speaks only to things that have already happened? Well, again, Your Honor, we... It's like vacating an order that talks about not holding last year's Super Bowl. It was held. It's over. Your Honor, the, the order, as this court has found, doesn't state its reasons. It, it permits plaintiffs, the court, or a third party an opportunity to make mischief by arguing that something happening on the ground is construction. And we don't think that our client, I don't think that my clients should be held to that risk of being hailed into court with the possibility of contempt proceedings. Ms. Bossart, let me get the benefit of your knowledge of the record. The amended administrative record was received by the district court on July 3rd of 24, correct? No, Your Honor. I don't have that date, but it was sometime in May, early May. What about the amended administrative record? Was that amended in July and has there been any other submissions of administrative records since then? I don't believe there has been, but I will double check on that. The renewed preliminary injunction motion, which was argued on May 14th before Judge Conley, that remains under advisement with the district court? That's correct. And further, there were, there were filings on May 23rd, which we think are tantamount to a third post-stay order motion for preliminary injunctive relief. There was an amended complaint filed in, on May 22nd, is that correct? Correct, Your Honor. Then there was talk in the papers about a site visit by the judge in late June. Did that happen? It did not, Your Honor. The federal defendants argued and we agreed that a site visit is not appropriate in an Administrative Procedure Act case where review is based solely on the administrative record. There was an oral argument scheduled for August 8th that was canceled. The topic for that argument was summary judgment on the merits and the renewed PI motion? Your Honor, it's my understanding that the, that what was scheduled for that hearing was the summary judgment briefing, although we were prepared to address the pending PI motions if they came up. So the, the merits briefing has caught up and is at least equal to the, any briefing on the preliminary injunction? That's correct. That's all I know. Ms. Bossart, can I ask you to address, if we were to reach the merits in this case, could you address, in essence, the district judge's orchestrated train wreck comments here and the problems posed by what, what looks to me like an incentive if, to slow walk filing the record, slow walk the litigation while, while a project like this goes forward without meaningful judicial review in the meantime? Thank you, Your Honor. Well, we, so the orchestrated train wreck, which was a quote in the appellee's brief in response to our brief, which cited the, the opinion that this court said was vacated and should not be relied on, we believe was based on fundamental errors of fact. There's been no slow walking. This project has been reviewed, considered, vetted, and subject to public comment since MISO devised it 13 years ago. My clients have always said and proceeded in accordance with their intent to build the project as soon as possible within the bounds of the law because it is an important piece of infrastructure that is in the public interest because it makes the grid, it helps the I understand your position on that and, and frankly have a fair amount of sympathy for it. But I also understand, let's take for example the March 21st order that the district judge issued really without any explanation but with, with obvious reasons given the short time fuses. Under Winter, the Supreme Court's decision in Winter, do you think a district judge has discretion to take, to issue an injunction that would give him literally a few hours to think about the problem posed by a request for emergency injunctive relief? Well, Your Honor, there is a procedure under the rules for a temporary restraining order. Of course. But, but we believe here the court had longer than a few hours, of course, and the court could have at least addressed those Winter factors in some, you know, albeit, you know, way that was less in-depth than it will ultimately do at summary judgment and that's the nature of preliminary injunctions. The Winter factors. So, so the Winter factors, the Winter and procedural requirements don't really apply to TROs? The district judge has a lot more latitude? Well, Your Honor, I, I don't, I'm not prepared to answer that today but, because I haven't looked at it but I think that the issue is that the rules allow for a truncated procedure for a circumstance that is more exigent than a preliminary injunction where the plaintiff is seeking relief that does not last as long as the plaintiffs were seeking here. There's no exception to the Winter. Overnight is okay? Your Honor, this, this was a one-sentence text order. Overnight, the court could have come up with some more fulsome rationale. Um. In terms of more fulsome rationales, do you think this court can look at the district judge's opinion, um, denying a stay pending this appeal in which we got considerably more explanation of, uh, the judge's thinking about this issue? Your Honor, I think even if the court does look at that order, it doesn't cure the defects because the findings on both likelihood of success on the merits and irreparable injury depend fundamentally on the vacated decision that this court said have, would have no further authoritative or precedential effect. That it recognized in the stay order was both premature and substantively problematic and nonetheless, uh, plaintiffs has continued to urge the court to follow its reasoning and has repeatedly cited to that decision. Um, that's partly why we think that a merits decision here, uh, is essential so that the court won't be tempted to make that mistake again and rely on the vacated opinion. Um, unless the court has further questions, I'd like to reserve my remaining time for  Certainly, counsel. Thank you. Mr. Varner. Good afternoon, Your Honors. Let me turn exactly to some of the questions the court was asking. Yes, this appeal is moot. It's moot as a matter of law, as a matter of practicality, as a matter of common sense. Those orders were issued more than seven months ago. Subsequent events have made them moot. The short-term orders maintain the status quo. They issued a preliminary injunction for two particular purposes. First of all, to enjoin the land exchange from being closed. And secondly, to enjoin the beginning of construction. Both of those have occurred. Both of those have taken place after this court's May 2nd order, staying the preliminary injunctions and indeed construction has been completed. And as two of your honors commented, this case is moot under the Well, at least in principle, the preliminary injunction can be moot, but the case can be live. And that's why I told your adversary that I would be asking you whether you think the is live. What relief might be possible in this litigation? Your honor, this appeal is an appeal only on the March 21st and 25th orders. I understand that. But if the case is no longer live, we will order the litigation dismissed. If the case is live, then presumably there's something the district court can do in the future. So in your view, is there a live Article III case or controversy before the federal judiciary? Your honor, there is a live case or controversy before the federal judiciary. That's being briefed on cross motions for summary judgment. Judge Brennan's question. Please tell me what is live. What is live is plaintiff's complaint involving the statutory violations of the National Wildlife Refuge Act and the National Environmental Policy Act. A case is moot when no relief is possible. So when you're saying the case is not moot, you're telling me that relief is possible. What relief? Your honor, this is not an appeal of those issues. I wish you would address my question. Your honor, I think I am. I'm within the confines of the appeal. The only thing that is before the court right now are the... Just listen to me. Yes, your honor. If this case is moot, we will order the suit dismissed. This is your time to persuade us that it is not moot. Your honor, the underlying lawsuit, which this court said in its May 2nd order, could proceed to a preliminary injunction, is not moot. It has been... What relief is now possible? What relief do you want? Excuse me. I got lost a little bit in the crossfire there. If you're asking the question of... Let me see if I can break it down and answer both of your honor's questions, and yours as well, Justice Brennan, Judge Brennan. First of all, this particular appeal of those two orders, as you've heard me... Address my question. It should be dismissed. What relief is possible in this lawsuit? In this lawsuit, what is possible, because throughout, the transmission companies have said it ought to be briefed first, and it ought to be constructed first... What relief is possible? What we have said... I'm asking for the last time, but you really need to answer that question. Your honor, I'm answering that question. There are two potential remedies. First of all, this court said it's July 2023 order. I'm not asking about July 2023. I am asking about right now. What relief is possible right now? If the district court judge finds in favor of plaintiffs on the cross motion for summary judgment, there are two possible forms of relief. If a permanent injunction is granted, which is contemplated by this court's May 2nd opinion. First, the court could require that the transmission lines and towers be taken out. Secondly... Are you requesting that relief? We haven't requested that yet. All the parties have agreed that remedies ought to be briefed separately before the court. We have raised two possibilities with the court. One, consistent with what this court has said, that the transmission companies proceed at their own risk. We have said the best remedy, therefore, would be it would be undone. We have also said to the court that there ought to be alternative remedies here. If the court finds that not to be a practical remedy at this point in time, plaintiffs should not be forced to simply go home if they are correct. If we are correct on the merits. I'm going to try one more time myself.  You said you're not saying you want removal of the new line. What would those alternatives be? First of all, what we've said to the district court, and it's in the record, by the district court ruling on the law, then we prevent this very problem from happening in the future. There is a remedy that's called an advisory opinion. Not an advisory opinion when we are looking for... You need to tell us what relief you want that is possible now. You're unwilling to tell us that you want the line taken down. Your... Do you want some precautionary steps taken to minimize environmental damage? Is that on the table? What's on the table, Your Honor, as we've discussed alternative remedies before the district court... You have to discuss them here and now. How many times must I say that? You cannot say we're going to wait for the district court. We are here. First, Your Honor, what ought to happen if the court finds taking down the lines is not practical, is there ought to be an alternative remedy that could involve the following components. First of all, as you mentioned, precautionary. Let's make sure that the Fish and Wildlife Service does not approve this happening again. No. Second... That's an advisory opinion. It will not happen. You have to tell us something that is real relief for your plaintiffs in this case. Secondly, Your Honor, what we would do is sit down with the transmission companies and with the federal defendants, and we would begin to negotiate in the same way that, for example, where wetlands have been... Look, look, look, you might negotiate some concrete proposal. That's all I'm asking you for. What relief do you think the district court can order? We believe that the district court can order an alternative remedy that, in effect, acts like sometimes in wetlands cases where there are offsets made and there's compensatory action that is done by the federal defendants and the transmission companies as, if you will, next best to what the first best would have been. The difficulty in this case, as I think Judge Hamilton pointed out, is that the transmission companies have kept building, building, building, building. There are at least two cases I'm aware of. We've cited them before this court. Both are Sierra Club cases, Sierra Club versus Marsh, and Army Corps of Engineers where courts have moved to fashion that. You have a case in front of you involving the Line 5 Enbridge oil pipeline where they are looking to do the same sort of thing. We would come back to the district court. The district court has provided for briefing or has been asked by all the parties to brief on remedies. We would look to alternative remedies that act, if you will, as offsets and compensation for the damage that has been done by a transmission line that shouldn't be built in that place. But if I could, let me go back. Hopefully, Your Honor, I fully answered that question. We do not have a specific proposal right now before this court in a case where the parties haven't briefed the merits on exactly what the alternative remedies would be. We have said, and it's a matter of the record, that there can and should be alternative remedies. Simply saying, it's all OK because they built, is not acceptable in this case. And we understand the practical problems of saying, take down the transmission lines, even if this court said, as it did, that the transmission companies are proceeding at their own risk. So what is before the court are the March 21st and 25th orders. And what the Supreme Court has said in the North Carolina versus Rice case is, mootness is a jurisdictional question because the court is not empowered to decide moot questions or abstract propositions. And as we discussed earlier, two elements of relief. That's the proposition that cuts both ways in this case. And as we've been discussing, can I ask you, Mr. Lerner? Yes. Given the big picture here of shifts towards more renewable energy sources, the need to hook them into the national infrastructure, and the fact that there is or was already one power line across the refuge in this area, that something like as many as 1,000 barges a month go up and down the river along this stretch, as I understand it, what's the substantive objection to, in essence, replacing one power line with another here? Your Honor, Congress has set up a balance. There is certainly a desire to move forward with transmission lines. And Congress has also said there are some places that we're going to protect. And namely, they should go through national wildlife refuges. This is one of those cases. I understand that. I understand that. I'm trying to understand what your substantive objection is here. The substantive objection here is that this huge power line should not have been allowed to go through a national wildlife refuge. That is clear as a matter of law. That is clear as a matter of Congress's decision that can promote more power lines from being developed, but protect places like national wildlife refuges, protect places like national parks. What that requires is siting. It requires transmission companies and the federal government to do what did not occur here, which was seriously and completely look at alternatives that would have gone around the refuge or through places that were not part of the national wildlife refuge. Now, we appreciate that one of the older, smaller lines has gone, is being taken out. But that is probably a line that would have been taken out anyway. So in this case, and going forward, we can have transmission line development. But transmission line development needs to be cited in a smart way where we're not going through national wildlife refuges. We're not going through national parks. We're not going through other places that Congress has specifically decided to protect. And that's what Congress did in the statutes here. If I can address Justice Brennan's, my apologies, I've promoted you, Judge Brennan's question. You asked about the May 9th preliminary injunction request. That's ancient history at this point. Six months ago, it was filed before the land exchange was closed on May 9th, before construction began on May 13th, and before construction was completed on September 26th. It's of no practical impact or value right now. The district court judge rolled it into the permanent injunction decision on May 14th at a So it's of no practical value right now. And, Your Honor, I'd be glad to talk with my clients about withdrawing that motion. Time has passed it by. Six months ago, it was live. It's no longer live. So, Mr. Lerner, the original complaint is filed back in March of 20... 2024. 24. The amended complaint's filed in May of... May of 24. That's correct. And both of them have relief requested in the complaint. Series of paragraphs, 17 paragraphs. Not a memory exercise, but are there aspects of the complaint that you say now survive given the current substantive and procedural posture of the case? Yes, Your Honor, and the reason... What are those? Let me just note, the reason for the amended complaint was the administrative record was finally produced on April 29th. One of the questions asked earlier, the judge said, gave us leave to amend the complaint to address the new administrative record. And as I look at those two wherefore clauses, the request of relief, I don't see them being much different. I think that, put to the side, the attorney's fees and the last couple paragraphs, they seem to be the same requests. They are requesting that the court find as a matter of a permanent injunction that the federal defendants and transmission companies violated the National Wildlife System Improvement Act and find that they violated the National Environmental Policy Act and therefore the Administrative Procedure Act. In other words, the merits of the case that are presented to the court below, that are before the court below, fully briefed on cross motions for summary judgment, and we anticipate that the district court judge will come out with a ruling. When the district court judge comes out with a ruling, that, of course, any party that's dissatisfied can seek an appeal from that. But at this point, we are entitled, we believe, following this court's May 2nd order, to get a decision by the district court on a permanent injunction, ruling on the merits of the case. Justice delayed has been justice denied in this case, and we believe that there are remedies that can be scoped that provide both deterrence in the future and compensation for what has been done, if the district court judge rules in our favor on the merits that we're discussing, Judge Brennan, that will provide sufficient offsets, compensation, and other land and so forth to make up for the damage that has been done if the court decides not to do the take out the transmission towers and take out the transmission line. First best remedy versus second best remedy. One brief follow-up then. Both counsel went to the district judge before August 8th and said, please give us an indication as to what this will be about. Then August 8th, the hearing gets canceled. Do you know why it was canceled? We were informed by the clerk that Judge Conley had COVID. The hearing was canceled the day before the hearing. Thank you. And we take that to be, as the clerk represented to us. If I might conclude, because I realize my time has been up answering the questions. The March 21st order had a less than 24 hours of effectiveness, as Judge Hamilton was mentioning. It's no longer effective. The March 25th order is no longer effective. And under this court's decision in Henko versus Brown, the juvenile, Durell juvenile group case, the Orion case, the Supreme Court's decision in North Carolina versus Rice, it's no longer effective because the two things that it sought to enjoin, stopping the land exchange and stopping the beginning of construction have occurred. What this court should do is issue an order simply declaring that the March 21st and 25th orders and this appeal, which only addresses that, not the merits of the case, are moot and dismiss the appeal. Thank you, your honors. What do you say about the Munsingware problem? I'm sorry, your honor. What do you say about the Munsingware problem? The Supreme Court has held that you don't dismiss an appeal as moot. You vacate the order when something becomes moot. That's the holding of Munsingware. Your honor, also of ATF against Galeotto. There are actually quite a few cases. Your honor, I'm not familiar with those cases. We'll be glad to look at those cases and submit something supplemental. If we think we need more, we'll let you know. I have cited, we have cited in our briefs two Supreme Court cases. One of them is North Carolina versus Rice. That is very clear when it comes to mootness. North Carolina versus Rice, page three of our brief and the citation to that, I think I gave the court before, but to avoid any problem. Counsel, we have your position. 404 U.S. 244. North Carolina versus Rice and also- Counsel, thank you. Hall versus Beals. Thank you, your honor. Anything further, Ms. Bossert? Just a few quick things, your honor. Although plaintiff's counsel said the appeal was moot, he was not willing to commit earlier to withdrawing his pending motions for preliminary injunction, which seek the same relief sought in his motion that's now on appeal. In addition to the May 9th motion he mentioned, I would direct the court's attention to pleadings filed on May 23rd, which attached a new statement of proposed findings of fact and again sought injunctive relief, did not submit a new proposed order or in any way alter the relief that they had already sought. In terms of whether this was adequately cited, there are just copious documents in the record. There's a 2019 environmental impact statement that discusses at length both system and crossing alternatives that were analyzed. There's a supplemental environmental assessment done in 2023 by the Rural Utility Service. There's an environmental assessment done by the Fish and Wildlife Service. There's a net benefit analysis done by the Fish and Wildlife Service. There's an ample record that supports the idea that this was as well studied as any project ever has been. And finally, counsel said that the documents did not adequately study alternatives that would go around the refuge. This is a 261 mile long... Thank you, counsel. The case is taken under advisement and the court will be in recess.